523 A.2d 1134

**COMMONWEALTH of Pennsylvania**

**v.**

**James Donald FRIES, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 1, 1986.

Filed Feb. 9, 1987.

Reargument Denied April 23, 1987.

Petition for Allowance of Appeal Denied Sept. 2, 1987.

Susan E. Hartley, Athens, for appellant.

Daniel J. Barrett, Athens, for appellee.

Before WICKERSHAM, ROWLEY and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from judgment of sentence entered after a jury convicted appellant of various offenses including kidnapping, rape, involuntary deviate sexual intercourse, simple assault, theft and burglary. These charges arose from an incident wherein appellant kidnapped a minor female and held her captive in the woods for three days, forcing her to undergo repeated sexual assaults.

Appellant raises seventeen (17) issues for our review. After a thorough review of the record, the parties' briefs, the lower court opinion, and the relevant case law, we must conclude that the lower court was correct in its analysis and resolution of these issues and find that they are without merit. We will, however, address appellant's arguments dealing with sentencing as the lower court provided no basis upon which we are able to rely in resolving those issues.

Appellant was sentenced to a minimum of sixty-four (64) years and a maximum of one hundred and sixty-four (164) years imprisonment. Individually the sentences were as follows: three (3) counts of rape—eight (8) to twenty (20) years, each to run consecutively; one (1) count of kidnapping—six (6) to twenty (20) years, to run consecutively; four (4) counts of involuntary deviate sexual intercourse— eight (8) to twenty (20) years, each to run consecutively; one (1) count of terroristic threats—one (1) to two (2) years to run consecutively; and one (1) count of simple assault— one (1) to two (2) years to run consecutively. Three burglary sentences of four (4) to twenty (20) years were to run consecutively to each other but concurrent to the offenses against the person. Sentences on offenses involving a second victim were also set to run concurrent with the sentences imposed for offenses against the primary victim. In addition to the aforementioned sentences, appellant also received numerous concurrent sentences which are not at issue in the instant appeal.

Appellant now contends the lower court erred by: 1) relying upon impermissible considerations in formulating

his sentence; 2) incorrectly applying the sentencing guidelines; 3) failing to state sufficient reasons for the sentence on the record; and 4) imposing a sentence that is manifestly excessive.

Generally, we note that sentencing is a matter within the sound discretion of the sentencing judge and a sentence will not be disturbed by an appellate court absent manifest abuse. A sentence must either exceed the statutory limits or be manifestly excessive to constitute an abuse of discretion. *Commonwealth v. White,* 341 Pa.Super. 261, 491 A.2d 252 (1985). A sentencing judge's discretion must be accorded great weight as he is in the best position to weigh various factors such as the nature of the crime, the defendant's character, and the defendant's displays of remorse, defiance, or indifference. *Commonwealth v. Duffy,* 341 Pa.Super. 217, 491 A.2d 230 (1985).

Keeping these principles in mind, we now turn to appellant's assertion that the sentencing court relied upon impermissible considerations in formulating his sentence. Specifically, appellant takes issue with the sentencing court's statement that its reasons for imposing the sentence included appellant's "horrendous prior criminal record, including prior sexual offenses and offenses involving minors." (S.T., 4/22/85, p. 36). Appellant claims he has previously pled guilty to only one offense of corruption of minors and only one offense of rape; thus the use of the word "offense" in the plural form implied reliance by the court upon arrests which did not result in convictions, which is error. The court acknowledged and corrected this misstatement, however, when it noted during appellant's argument on his motion to modify sentence that while appellant had been arrested on other counts of rape and involuntary deviate sexual intercourse, those charges had been dismissed by the Commonwealth. (S.T. 5/17/85, p. 13).

While it is true that imposition of a criminal sentence based upon misinformation contravenes due process of law, *Commonwealth v. Puchalski,* 310 Pa.Super. 199, 456 A.2d 569 (1983), in the case *sub judice,* the sentencing

judge noted his own misstatement and subsequently corrected himself. Furthermore, it is not improper for a court to consider a defendant's prior arrests which did not result in conviction, as long as the court recognizes the defendant has not been convicted of the charges. *Commonwealth v. Johnson*, 333 Pa.Super. 42, 481 A.2d 1212 (1984).

Appellant further contends the court incorrectly calculated his prior record score pursuant to the sentencing guidelines. The lower court calculated appellant's prior record score as a six (6) based upon appellant's prior convictions of fifteen counts of burglary, one count of rape, one count of theft and one count of corruption of minors. Appellant argues that his prior record score is a three (3) because at the sentencing proceedings for his prior crimes, the court treated the crimes as a "spree" and sentenced accordingly.

42 Pa.C.S.A. § 9721, 204 Pa. Code § 303.7(c) provides:

Prior multiple convictions and adjudications of delinquency for offenses arising out of the same criminal transaction for which concurrent or consecutive sentences were imposed are scored as a single conviction equal to the statutory classification of the most serious conviction offense. Prior multiple convictions and adjudications of delinquency arising out of separate criminal transactions are scored as separate convictions, and each is computed in the prior record score.

Appellant claims that his prior convictions arose out of one transaction and thus, only the most serious conviction, the rape, is counted, which would constitute a prior record score of three (3).

The Pennsylvania Commission on Sentencing has stated, in reference to § 303.7(c), that:

[a] "transaction" is a crime or crimes which were committed by a defendant at a single time or in temporally continuous actions that are part of the same episode, event, or incident, or which are conspiracy and the object offense. "Spree" crimes are not part of the same trans-

action unless they occurred as continuous actions not separated in time by law abiding behavior.

Pa.C.Sent.2d (September 1, 1986) p. 58.

The lower court recognized this distinction as evidenced by its comments during sentencing, wherein the court stated;

> First with respect to the prior convictions and the argument that those convictions should be treated as one criminal transaction, giving the Defendant a prior record score of three instead of six. The court would disagree. The record reflects that *those offenses were committed over a two week period and to call them a crime spree is not to say they were a single criminal transaction.* To the extent that the then Assistant District Attorney and Presiding Judge suggested that they were a single criminal transaction, this court would specifically reject that rationale. Each of those offenses was a separate criminal offense and the commission of one did not necessarily involve the commission of the other. The Defendant could have, at any time, discontinued the crime spree. Therefore, the court concludes that the defendant does, indeed, have a prior record score of six, the maximum allowable under law. (Emphasis added)

(S.T., 4/22/85, pp. 25, 26)

■ We find the lower court's conclusion to be correct and accordingly, find appellant's prior record score to be a six.

Appellant next contends that his offenses in the instant action arose out of the same transaction and thus the trial court should have used his prior record score only once, for the rape, and calculated the remaining sentences with a prior record score of zero. Appellant cites to 42 Pa.C.S.A. § 9721, 204 Pa. Code § 303.6 for the proposition that all of his crimes in the case *sub judice* should be considered as "one transaction" for sentencing purposes due to the geographical proximity of the crimes, the identities of the

victims, and the three-day time frame of his actions. Section 303.6 provides:

### § 303.6. Consecutive sentences.

(a) When imposing sentences for convictions arising out of the same transaction, the prior record score is computed for the offense with the highest offense gravity score in such transaction. For the remaining offenses in such transaction, the prior record score shall be zero.

(b) When imposing sentences for convictions arising out of separate transactions, the prior record score shall be computed independently for each conviction.

The lower court, in addressing appellant's contention, stated:

The Court would next address the suggestion that all of these offenses for which the defendant is about to be sentenced are one criminal transaction. The Court is aware of cases using the terminology which Defense counsel has used, however, the ultimate test in determining whether or not an offense merges such that it is one offense for purposes of sentencing is whether or not the offenses necessarily involve ... the offense ... excuse me, the commission of one offense necessarily involves the commission of the other offense. There are some cases, some crimes here which merge and the Court would find that except for those which it is about to indicate do merge, none of the offenses necessarily involve the commission of any of the other offenses for which the Defendant will be sentenced today.

(S.T. 4/22/85, p. 27).

We cannot agree with the court's analysis as he equates the doctrine of merger of offenses with that of "transaction" for sentencing purposes. The question of merger of offenses has not been raised on appeal and, as we have indicated, the court properly imposed the sentence to include merger of the included offense where required. Appellant's argument focuses on the assignment of prior

record scores when imposing consecutive sentences, not on which crimes merge for purposes of sentencing. Appellant does not argue that *he should not have been sentenced* separately on the various offenses, but rather, that the calculations used to *determine the permissible sentencing range* were improperly formulated. As stated by this Court in *Commonwealth v. Williams,* 344 Pa.Super. 108, 124, 496 A.2d 31, 40 (1985):

> The doctrine [of merger of offenses] acts to limit the multiplicity of sentences which may be meted out for what is, in practical effect, a single criminal act, even when a comparison of the elements of the various crimes charged does not reveal that any of those crimes is necessarily included in any other.

In comparison to the purpose of the merger doctrine, the purpose of section 303.6 is to prevent "the defendant's prior record from counting against him more than once when computing guidelines for a criminal transaction." Pa.C. Sent.2d (September 1, 1986) p. 51.

Thus, our inquiry must focus upon whether the crimes committed in the instant action constitute a "transaction" as set forth in section 303.6. We note that there is a paucity of case law to aid us in this endeavor.

The Pennsylvania Commission on Sentencing has stated, in reference to section 303.6(a), that:

> A "transaction" is a crime or crimes which were committed by a defendant at a single time or in temporally continuous actions that are part of the same episode, event, or incident, or which are conspiracy and the object offense. "Spree" crimes are not part of the same transaction unless they occurred as continuous actions not separated in time by law-abiding behavior.

Pa.C.Sent.2d (September 1, 1986) p. 51.

It is clearly apparent, therefore, that merger applies to different crimes which are encompassed in a single

act, *Williams, supra,* whereas "transaction" applies to several district nonmerging crimes that occur on a continuum within an episode or event. Section 303.6(a). It is equally clear that a transaction is not to be equated with "serial crimes" or "signature crimes" or "patterned crimes," all of which have items of similarity, identity and repetitiveness separated by periods of noncriminal behavior. Likewise, crime "sprees" in which numerous crimes are committed in a short period of time, but separated by law abiding behavior, are not included in the concept of transaction. (See discussion, supra, on setting prior record score at 6).

■ The record reveals that appellant abducted his young victim and held her captive for a period of three days in the mountains of Bradford County. During this ordeal, appellant burglarized various cabins and repeatedly raped his victim. A fair reading of the Sentencing Commission's definition of "transaction" leads us to conclude that appellant's crimes were "temporally continuous actions" which were part of the "same episode, event, or incident." Clearly, appellant engaged in the kind of crime "spree" wherein the various crimes were not "separated in time by law-abiding behavior." The crime of kidnapping was an ongoing criminal act which continued throughout the three-day period. The sexual crimes were ancillary to and derivative of the kidnapping, whereas the burglaries were supportive of the kidnapping and sexual crimes.

As stated by the Sentencing Commission, not all "spree" crimes are considered the "same transaction" for purposes of section 303.6. If a person commits numerous burglaries in a continuous fashion over a short period of time, such as in an apartment building or a single neighborhood, it could reasonably be called a crime "spree." However, despite the commission of numerous burglaries over a short period of time, if every night the burglar goes home and resumes his normal activities, his crimes cannot be considered one "transaction" as they were separated in time by law-abiding

behavior. In the instant action, although there were times when appellant was not burglarizing cabins or raping his victim, the crime of kidnapping continued to be operative and was interrelated with other crimes throughout the three-day period. That is not to say that in a situation similar to the Patty Hearst kidnapping in California, and the extensive period of kidnapping and imprisonment that followed, this rationale would apply to the bank robberies and other crimes committed thereafter. In that type of case, after the initial episode, the criminal activities engaged in take on an independent and separate character from the initial kidnapping. Here, it would be difficult to separate the sexual crimes and the burglaries from the kidnapping which was the basis for sustaining them.

Our research has disclosed only one case concerning application of section 303.6. In *Commonwealth v. Noland*, 351 Pa.Super. 368, 505 A.2d 1355 (1986), the evidence showed that appellant entered the victim's home and shortly thereafter raped her. This Court concluded, in an unpublished memorandum, that due to the close temporal and physical relation of the burglary to the rape, the crimes arose out of the same transaction for purposes of section 303.6. In a published Concurring and Dissenting Opinion, Judge Olszewski disagreed with the majority's decision that the crimes arose out of the same transaction. While we are not bound by either the majority's memorandum or the published Dissenting Opinion, we feel it necessary to address the dissenter's contentions. Judge Olszewski states that:

The majority draws the conclusion that the crimes of rape and burglary arose out of the same transaction because of their "close temporal and physical relationship." While this relationship is one factor that should be considered by the court in analyzing this problem, I hesitate to conclude my inquiry here. Our Supreme Court in *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177 (1983), was confronted with a similar problem in interpret-

ing the phrase "single criminal episode" under Pa.C.S.A. Sec. 110 (Purdon 1973). This statute was designed to prevent a second prosecution where charges have been joined with those raised in the first prosecution. Thus, in defining this term, this court considered the temporal sequence of events, the logical relationship between the acts and whether the criminal offenses involved common issues of law and fact. Analogizing this situation to the instant case, I find that the crimes of rape and burglary did not arise from the same transaction but separate transactions.

*Noland,* 351 Pa.Superior Ct. at 369, 505 A.2d at 1355.

We find analogy to *Hude, supra,* misplaced. The court, in *Hude,* addressed the issue of compulsory joinder of criminal offenses arising from the same criminal episode and found that "where a number of charges are logically and/or temporally related and share common issues of law and fact, a single criminal episode exists, and separate trials would involve substantial duplication and waste of scarce judicial resources. In such cases, failure to consolidate will bar successive prosecutions." *Hude* 500 Pa. at 494, 458 A.2d at 183.

The court, in *Hude,* interpreted the phrase "single criminal episode" in relation to the purposes to be achieved by 18 Pa.C.S.A. § 110 and the compulsory joinder rule. These purposes are set forth as two distinct policy considerations:

(1) to protect a person accused of crimes from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation.

*Hude,* 500 Pa. at 489, 458 A.2d at 180.

In fact, the *Hude* court found that appellant's separate sales of marijuana on different dates were so logically interrelated that they essentially involved the same issues

of law and fact and, therefore, should have been tried together.

■ As we have indicated above, mere similarities, "patterns" or "signatures" in repetitive crimes, do not establish a "transaction" for sentencing purposes, even if for trial purposes there are sound policy reasons to consolidate those matters for trial. It becomes then a matter for judicial determination as to whether those related crimes are so temporally continuous actions, unseparated by law abiding behavior, as to constitute a "transaction," within the meaning of sections 303.6 and 303.7(c).

Having decided that the lower court was in error for failing to consider this a single transaction episode, the application of a prior record score of six (6), to each of the offenses for which he was found guilty, was error. Calculating the prior record score as six (6) for each offense, at the lowest end of the standard range, would have resulted in a standard range[1] of 60½ to 79½ years, but with some offenses to run concurrently, the actual minimum sentence imposed was 64 years. Applying a prior record score of six (6) to only the most serious offense, which was rape, the standard range would be 25 to 47½ years for all offenses computed, and the aggravated range would be 46½ to 58½ years. Thus it is apparent that the range of sentences that are suggested by the guidelines vary substantially when the rule of "single transaction" is applied to computation of the sentence.

We, therefore, affirm the trial court in all respects as to the conduct of the trial and sentencing considerations, except that we reverse as to application of the prior record score of six to all convictions. We limit that application to only the most serious crime, rape, in the transaction. Judgment of sentence is hereby vacated and the case is remanded for resentencing consistent with this Opinion.

Jurisdiction relinquished.

1. The terminology used in the second edition of the sentencing guidelines changes the term "minimum range" to the more accurate term "standard range."